**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| DAVID C. TURNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 18-cv-1382-JES |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ORDER AND OPINION

This cause is before the Court on Petitioner David C. Turner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1). Turner pleaded guilty to receipt and possession of child pornography and claims his attorney provided ineffective assistance at sentencing when defense counsel failed to present mitigating evidence to counter the prosecution's portrayal of him as a dangerous individual. The Court finds a hearing on the Motion is not required because "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *Hutchings v. United States*, 618 F.3d 693, 699–700 (7th Cir. 2010) (quotation omitted). Because Petitioner is not entitled to relief, the § 2255 motion is DENIED.

### I. BACKGROUND[1]

In January 2017, Turner was charged with two counts of receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1), and one count of possession of child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). R. 12, Indictment. The

---

[1] Citations to documents filed in this case are styled as "Doc. __." Citations to the record in the underlying criminal case, *United States v. Turner*, Central District of Illinois, Peoria Division, Case No. 17-cr-10003, are styled as "R.__." The Presentence Investigation Report is cited as "PSR" and can be found at R. 18.

Indictment charged in Count 1 that Turner "knowingly received a visual depiction, that is, the file titled, '((Hussyfan)) (Pthc) Kitty 1 (5yo).CBABY – EAGERLY SUCKS grown man's BIG DICK 3 TIMES & lets him CUM IN HER LITTLE MOUTH GOOD!.mpg,' using a means and facility of interstate commerce," in Count 2 that Turner "knowingly received a visual depiction, that is, the file titled, 'compilation 101 Cumshots pedo Brand New 2008 Pthc (Kingpass Hussyfan Kleuterkutje Kinder) 101 Cumshots Revised By Harrier_xvid.avi,' and in Count 3 that Turner "did knowingly possess a 32 GB Sandisk USB drive, S/N B271-B28F, that contained visual depictions other than those specified in Counts One and Two where such visual depictions involved the use of minors engaging in sexually explicit conduct and were of such conduct. *Id.* Turner pleaded guilty without a plea agreement to all three counts of the Indictment on February 16, 2017. Before Turner pleaded guilty, the Court recounted the charges in the Indictment, the potential statutory penalties, and Turner's right to continue to trial. R. 34.

The United States Probation Office prepared a Presentence Investigation Report (PSR) in anticipation of Turner's sentencing hearing. As recounted in the PSR, on February 9, 1996, Turner was convicted of three counts of Production of Child Pornography, and Possession of Child Pornography in Tazewell County Circuit Court, Illinois. PSR ¶6. Turner was 19 years old at the time of the offense and had videotaped sexual relations between himself and a 14-year-old girl, whom Turner stated he was in a relationship with at the time. PSR ¶6. While in prison on this offense, Turner attempted to hire his cellmate to murder the Judge, Prosecutor, victim, and victim's family. PSR ¶49. Turner was convicted of solicitation of murder, solicitation of aggravated kidnapping, solicitation of harassing a witness, and solicitation of intimidation in Johnson County Circuit Court, Illinois. PSR ¶49. Turner was released from prison on June 6, 2016, after serving both sentences, and he registered as a sex offender.

In December 2016, only six months after his release from prison, Turner received the video file named in Count 1 of the indictment: "((Hussyfan)) (Pthc) Kitty 1 (5yo).CBABY – EAGERLY SUCKS grown man's BIG DICK 3 TIMES & lets him CUM IN HER LITTLE MOUTH GOOD!.mpg." PSR ¶12. As explained in the PSR, authorities were alerted as to the internet protocol (IP) address for devices offering to share files known to contain images of child pornography. The IP addresses were eventually linked to Turner. During the investigation, the officer downloaded three files directly from one of the IP addresses later found to be linked to Turner. PSR ¶¶12-16. One "of those files titled 'Pthc – Mandy (09yr) – Real Incest 2 [USA][00.13.01].mpg,' was 13 minutes long. It depicted a nude prepubescent female performing oral sex on an adult male. The third file, '(Ptch) Hc Celia 02 5yo Fuck (62m31s).mpg,' depicted a series of scenes involving a prepubescent female. In some scenes, the minor was nude. In others, she was partially clothed. She displayed her genitals in a lascivious manner in various scenes." PSR ¶13.

The investigation lead to a search warrant being issued at the home of Michael and Pamela Schrader. PSR ¶¶14-15. Turner's father was dating Pamela Schrader, and Michael Schrader, her husband, lived in the basement. PSR ¶15. Turner also lived in the residence and was found sleeping in his bedroom. PSR ¶15. When law enforcement officers entered the room, "[t]he computer was running the peer-to-peer program, Frostwire, and was actively downloading a large music file. There was a HDMI cable with one end attached to a large screen television and the other end unattached. The computer was seized so that a forensic analysis could be performed. The defendant was taken into custody and charged with the counts listed in the Indictment." PSR ¶15.

After initially declining to talk to agents, Turner admitted to using Frostwire to download music. PSR ¶17. A forensic analysis of the computer revealed that Turner had received and possessed 84 video files of child pornography, "two that contained bondage and three included urination. It also contained 481 image files, with 6 of them containing bondage." PSR ¶22. As recounted at the change of plea hearing, Turner "admitted to using peer-to-peer programs to search and download pornography . . . stating that he had been downloading child pornography for approximately two and a half months. He also stated that he knew what he had done was wrong and illegal but claimed that he was collecting these images and videos to give to his father at another date." R. 34.

Due to his prior qualifying conviction related to sexual abuse, Turner faced an enhanced statutory penalty of at least 15 years and up to 40 years for Counts 1 and 2 (Receipt) and at least 10 years and up to 20 years for Count 3 (Possession). PSR ¶74; 18 U.S.C. §§ 2252(b)(1) & (b)(2). The PSR found that his total offense level was 32 under the sentencing guidelines, and that Turner had a criminal history category of IV, resulting in a guideline imprisonment range of 168 months to 210 months. PSR ¶75. However, because the statutorily authorized sentence for Counts 1 and 2 was a minimum of 15 years and a maximum of 40 years per count, the guideline imprisonment range became 180 months to 210 months. PSR ¶75.

At the sentencing hearing on June 15, 2017, the prosecution argued that a lengthy sentence was needed to protect the public from Turner's criminal behavior. The prosecution stated that "[i]t is clear that he is attracted to children." R. 35, Sent. Tr. at 45. The prosecution also recounted the images involved in the case as stated in the PSR "[s]o that there is a clear record of the type of images that Mr. Turner is interested in obtaining and using for his own sexual gratification." *Id*. at 46. Additionally, the prosecution stated that "[w]hen [Turner] was

19 and he was engaged in sexual intercourse with a 14-year-old, that's different. Now we are talking about very, very small children, infants, four to five year olds being raped, tortured and in bondage. That's the type of thing that Mr. Turner gets excited by and that's what was found on a flash dive in his shaving kit." *Id*. at 50.

Turner's defense counsel, Federal Public Defender Robert Alvarado, argued that the Court should impose the minimum sentence of 180 months' imprisonment—which was within the guidelines. Mr. Alvarado's statement centered around his argument that the sentencing guideline in this case was substantially unreasonable. R. 35, Sent. Tr. at 51-53. *See also*, R. 20, Def. Commentary at 1-5. Mr. Alvarado also highlighted that after serving a 15-year imprisonment sentence, Turner's likelihood of recidivism would significantly decrease: "The simple fact is that Mr. Turner is going to be at least in his late 50s if he got the minimum sentence in this case. And by that point in time, we know from statistics that, generally speaking, his desire and the actual commission of crimes after those ages goes down dramatically." R. 35, Sent. Tr. at 54. Finally, Mr. Alvarado noted that in this case, although Turner was subject to the mandatory minimum sentence, he believed this was five years above what should be imposed. *Id.* at 53.

Turner was also provided with the opportunity to make a statement to the Court prior to sentencing, and said:

> I mean, what can I say? You know, I did what I did, and I accept responsibility for that.
>
> The one comment that I do want to make is this is when—back when I was 19 years old, I had a relationship, a long-term relationship with a girl for about two and a half years, which we made pornographic videos. When I went to prison, I was very angry because I had a 30-year sentence for something I felt injustice and I lashed out in a way I shouldn't have and that was my fault. I took responsibility. Took a 15-year sentence for that, and even pled guilty to some of the charges that I felt I wasn't guilty of, but it was part of the plea.

> Now when I got out, there is -- I did something wrong. I had certain intent for that, and I take responsibility for that intent. And I take responsibility as far as what I have done and I apologize to this court. I apologize to the victims in those films and any victims not been found. And I just hope that you understand that I'm not trying to not feel sorry or apologetic, but I think it doesn't go as far as it needs to and there is nothing else that I can do but to say that I'm sorry. Thank you.

R. 35, Sent. Tr. at 55-56.

While the Court acknowledged defense counsel's argument and noted that the Court has sentenced below the guidelines in such cases before, the Court found such a departure was not warranted in this case:

> You have demonstrated by your actions, which include your criminal history, that you, as Mr. Hanna points out, are a recidivist. You're a threat to the public. You have set out your fascinations in paragraph 17 through 22, set out your fascinations with rape and bondage and torture of young children. We need to protect -- when considering all of the factors in 3553, the nature of circumstance of the offense, history and characteristics of yourself, the need to protect the public, definitely jumps out."

R. 35, Sent. Tr. at 59. Accordingly, the Court elected to make an upward departure from the guidelines and sentenced Turner to 240 months' imprisonment on the receipt of child pornography counts, and 150 months' imprisonment on the possession of child pornography count, to be served concurrently. *Id.* at 60; R. 29, Judgment.

Turner filed a timely notice of appeal the day after his sentencing hearing. However, Turner later voluntarily dismissed his appeal after his appellate counsel filed a Motion pursuant to *Anders v. California*, 386 U.S. 738 (1968), which argued that any challenge to Turner's sentence would be frivolous. R. 47, Seventh Circuit Mandate.

Turner filed this timely Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1) in October 2018, alleging his Sixth Amendment rights were violated because he received ineffective assistance of counsel at the sentencing hearing. Specifically,

Turner alleges that his attorney failed to present any mitigating evidence, including mitigating evidence as to Turner's "intent" for downloading child pornography, failed to investigate and submit various mitigating evidence into the record that Turner had provided his counsel, including past psychological and sex offender evaluations and a previous "public apology" letter for his past crimes, failed to subpoena the past psychological and sex offender evaluators from 1995 to 2014, and failed to request a new psychological and sex offender evaluation. Moreover, Turner claims that this failure to present mitigating evidence was especially damaging in light of the prosecution's characterization of him at the sentencing hearing as a sexually dangerous individual. Turner claims that had this mitigating evidence been presented, there is a reasonable probability that he would have received a lower sentence.

The Government filed a response on January 28, 2019 (Doc. 8), which included an affidavit of Turner's counsel, Mr. Alvarado (Doc. 8-1). Turner filed a reply on March 21, 2019 (Doc. 11). This Order follows.

## II. LEGAL STANDARD

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Relief under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995).

Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468,

470 (7th Cir. 1993) (citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993)). A § 2255 motion is not a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). However, "it is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually. . . involve evidence outside the record." *Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002).

The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). Under *Strickland's* familiar two-part test, a petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). "[I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690.

A petitioner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991). Therefore, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies." *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### III. DISCUSSION

Turner argues that his Sixth Amendment rights were violated at sentencing when his counsel failed to investigate or present mitigating evidence on his behalf that would counter the government's claims that Turner was a sexually dangerous individual. Turner's argument stems from his claim that he was downloading child pornography solely to help his father. As Turner alleges in his motion, Turner's father has a criminal history of molesting children, and was held in civil detention for twenty years due to his mental illnesses, which includes pedophilia. After Turner's release from prison in 2016, Turner, initially homeless, moved in with his father's good friend/ girlfriend Pam Schrader. Turner alleges that Pam confided in him that she had problems with Turner's father regarding intimacy. Turner alleges he had previously seen a documentary that told about a "treatment" method with child pornography whereby an individual would be allowed to masturbate to child pornography in a clinic, and then their adult relationship intimacy issues would improve. Doc. 1 at 6. According to Turner, this allows an individual to "achieve that deviant desire without physically harming a child." *Id*. According to Turner, it was this desire to help his father that motivated him to receive and possess 84 video files of child pornography, "two that contained bondage and three included urination," as well as "481 image files, with 6 of them containing bondage." *See* PSR ¶22. Moreover, Turner finds it significant that the child pornography was on a flash drive, but only legal pornography was on his computer.

Turner claims that he is not attracted to children, and defense counsel should have presented mitigating evidence to counter the government's statements otherwise during the

sentencing hearing. Specifically, Turner alleges that he gave or alerted his defense counsel, Mr. Alvarado, allegedly mitigating evidence and defense counsel failed to present the evidence and failed to present that his intent in receiving and possessing child pornography was to help his father, not for his own gratification. Turner alleges he gave or alerted to his defense counsel the following pieces of evidence: (1) a psychological evaluation done by Arthur Frasner on December 22, 1995, that was filed in Turner's pre-sentence investigation on January 10, 1995 in his state of Illinois child pornography case; (2) a "Psychological and sex offender evaluation on movant done by Jane Velez, PsyD, ABPS on November 10, 2000 that was filed in [Turner's] [Presentence Investigation Report] on August 2, 2002, in Turner's state of Illinois child pornography case after a successful appeal; (3) a motion filed on October 16, 2002, to strike portions of Turner's Presentence Investigation Report in his Illinois case; (4) ten pages "titled mistakes of fact and misquotes and misinterpretations regarding Jane Velez evaluation;" (5) a "Public apology from 2003" written by Turner; (6) Sex offender pre-release evaluation done on movant on Aug 21, 2014 prior to parole; (7) Letter from Oct. 21, 2015 regarding the pre-release final report; and (8) Several typed out factual statements by movant in regards to his previous offenses.

In addition to presenting these documents, Turner alleges defense counsel should have subpoenaed the past psychological evaluators from 1995 through 2014 to be witnesses at the sentencing hearing. Turner also argues that his counsel should have asked for a new psychological and sex offender evaluation. Turner argues that these files, combined with Turner's explanation for why he was downloading child pornography, would have shown that he did not download child pornography for his own satisfaction and that he was not a sexually

dangerous individual.  The Court finds that Turner has not shown that his counsel's performance was either deficient or prejudicial.

### A. Defense Counsel's Performance Was Not Deficient.

Generally, a Court must be "highly deferential" when examining counsel's performance, as "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689.  Here, as sworn in his affidavit, counsel read through all the mitigating evidence Turner provided and discussed both the materials and Turner's alleged intent with Turner.  Doc. 8-1, Affidavit ¶4-8.  Mr. Alvarado states that the mitigating evidence referred to "by Mr. Turner [was] discussed thoroughly between Mr. Turner and myself throughout the time I represented him, both before he pleaded guilty and in the preparation period before sentencing."  Doc. 8-1, Affidavit ¶4.  Turner agrees that Mr. Alvarado and himself had such discussions but claims that he still wanted Mr. Alvarado to present the evidence if the government argued sexual dangerousness.  Doc. 11, Reply at 20-24.

Mr. Alvarado has provided sound reasons for his decisions not to present this evidence.  Mr. Alvarado explained that he believed Turner's alleged intent for downloading child pornography "could be considered an aggravating factor, not a mitigating factor."  Doc. 8-1, Affidavit ¶5.  With regard to the past psychological and sex offender evaluations, Mr. Alvarado explained that he believed the evaluations would have had limited value due to their age and because they did not take into account the recent offense conduct.  *Id.* ¶6.  Additionally, Mr. Alvarado found some of the information was aggravating and found that nothing in the reports would have significantly helped him at sentencing.  *Id.*  Turner clarifies in reply that he also is alleging that Mr. Alvarado was ineffective for failing to subpoena the evaluators themselves, but if Mr. Alvarado reviewed the reports and found them not to be useful, it would have been equally

useless to subpoena the evaluators.

Mr. Alvarado explained that he did not believe a new psychological and sex offender evaluation would have been beneficial. While Turner evidently believes an evaluation would have shown he did not have deviant desires and was not attracted to children, defense counsel believed that Turner's current offense conduct as well as his serious prior criminal history would have "loomed large on the issue of whether Mr. Turner could be sexually dangerous to minors." Doc. 8-1, Affidavit ¶7. Moreover, counsel is correct that the Government would have its own examination, and that examiner might make a specific finding that "Turner's behavior demonstrated a likelihood to commit further crimes." *Id.* While it is of course impossible to *know* what the evaluators would have concluded, Mr. Alvarado again had sound reasons for declining to get a new psychological and sex offender evaluation. Counsel's performance was well within the range of reasonable competence and was not constitutionally deficient.

Finally, counsel was not deficient for failing to present Turner's apologies from his prior crimes. These documents had no relevance to the current offense, and Turner had every opportunity to apologize for current and past conduct during his allocution or in a letter to the Court if he wished. Tellingly, during allocution, he chose to minimize his past conduct instead of taking responsibility for it.

In reply, Turner claimed that after the prosecution went "on to spin an elaborate story of vilifying petitioner," that defense counsel was required to rebut these claims. He also alleges that he instructed his attorney to present the allegedly mitigating evidence if the prosecution argued sexual dangerousness. The prosecution did argue that Turner was attracted to children. R. 35, Sent. Tr. at 45. The prosecution also recounted the images involved in the case as stated in the PSR "[s]o that there is a clear record of the type of images that Mr. Turner is interested in

obtaining and using for his own sexual gratification." *Id*. at 46. Turner alleges that the prosecution high jacked the sentencing hearing by characterizing him as a sexually dangerous individual. Turner believes that his counsel should have called for a recess in the sentencing hearing when he discovered that this argument was being made so that a new psychological and sex offender evaluation could be done and so that other "mitigating" evidence could be presented. However, given counsel's views that this evidence could cause more harm than good, the Court will not now second-guess the decision of defense counsel to not present the evidence. Perhaps other counsel would have proceeded differently, but there was nothing unreasonable about making the decision to continue the sentencing hearing and present what counsel believed to be the best argument—that the sentencing guidelines and statutory minimum sentence for this offense was already too high.

### B. Turner has Failed to Show Prejudice.

In order to establish that defense counsel's failure to investigate mitigating evidence was prejudicial, the petitioner must present new evidence that "alter[s] the sentencing profile presented to the sentencing judge." *Strickland*, 466 U.S. 668, 700 (1984). Moreover, under *Strickland,* Turner needed to present "more than a showing that the evidence would have been beneficial; the mere possibility of a positive effect on the trial court's sentencing decision is too speculative a basis for relief." *Andrashko v. Borgen*, 88 Fed. Appx. 925, 929 (7th Cir. 2004) (*citing Ducato v. United States,* 315 F.3d 729, 730-31 (7th Cir. 2002) (failure of attorney to present mitigation witnesses at sentencing "too uncertain" to justify reversal); *United States v. Ruzzano,* 247 F.3d 688, 697 (7th Cir. 2001) (mere possibility of different sentence "falls short of the required showing of a reasonable probability that the sentence would have been different").

Here, while Turner's evidence of his intent, if believed, may have altered the sentencing profile, taken as a whole, it is not beneficial evidence. Assuming the evidence would have convinced the Court that Turner was trying to "help out" his father, this explanation is hardly mitigating. As Mr. Alvarado points out in his affidavit, the Court rightly would have seen Turner's explanation as an admission of an intent to distribute child pornography to someone Turner knew or believed was a child molester. That Turner would believe he was "helping" someone by downloading brutal images of children being raped is evidence that he does not understand the consequences and harm from his actions and shows a complete disrespect for the law only six months after being released from prison. Notably, Turner states his belief that allowing an individual to watch child pornography would "achieve that deviant desire *without physically harming a child*." Doc. 1 at 6 (emphasis added). The children in these videos are real people that are continuously harmed each time these videos are viewed. If Turner presented evidence at sentencing that he did not download the child pornography for his own desires, but to distribute them to pedophile, the Court would have entered the same sentence or a higher sentence.

Moreover, the Court was not likely to believe Turner's story, even if presented with prior psychological and sex offender evaluations that found he was not attracted to children. The files Turner received and possessed included 84 video files of child pornography, "two that contained bondage and three included urination. It also contained 481 image files, with 6 of them containing bondage." PSR ¶22. The majority of these files featured prepubescent children. In light of the number of files downloaded and the types of files he chose to find, it would have been unlikely for the Court to be convinced that Turner himself did not have deviant desires. Moreover, spending two and a half months downloading child pornography, an activity Turner

knew was criminal, solely to help his father with alleged intimacy issues with his girlfriend is not a very believable story, regardless of Turner's protestations to the contrary. Turner's ineffective assistance of counsel claim is denied.

## IV.  CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, Petitioner has not made a substantial showing of the denial of a constitutional right. The Court declines to issue a certificate of appealability.

## V.  CONCLUSION

For the reasons stated, Petitioner David C. Turner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1) is DENIED. The Court declines to issue a certificate of appealability. This case is CLOSED.

Signed on this 29th day of October 2019.

*s/ James E. Shadid*
James E. Shadid
United States District Judge